UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEIJING DAYOU DINGXIN INVESTMENT MANAGEMENT PARTNERSHIP, L.P., *et al.*, | ) ) ) | CASE NO. 1:24-cv-137 |
| | ) | JUDGE CHARLES E. FLEMING |
| Petitioners, | ) ) | |
| | ) | |
| v. | ) ) | |
| CHAN QIAN WANG, *et al.*, | ) ) | **MEMORANDUM OPINION AND** |
| Respondents. | ) ) | **ORDER** |

Pending before the Court is Petitioners Beijing Dayou Dingxin Investment Management Partnership, L.P. and Suzhou Youtou Cornerstone Enterprise Management Center, L.P.'s Petition to Recognize and Enforce a Foreign Arbitration Award ("Petition") (ECF No. 1).  Respondent Hao Zhou has filed an opposition.  (ECF No. 23).  For the reasons discussed below, the Petition is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **The Parties' Agreement and the Foreign Arbitration Award**

This matter arises out of a contract dispute between Petitioners and Respondents.  On July 31, 2019, Petitioner Beijing Dayou Dingxin Investment Management Partnership, L.P. ("Petitioner 1") and Petitioner Suzhou Youtou Cornerstone Enterprise Management Center, L.P. ("Petitioner 2") entered into a Repurchase Agreement with Respondent Chan Qian Wang and Respondent Hao Zhou.  (ECF No. 1-1, PageID #68–78).  At the time, Petitioner 1 held 9.65% of the shares in ZUGA Medical, Inc. ("U.S. ZUGA"), a United States corporation, while Petitioner 2 held 2.30%.  (*Id.* at PageID #57, 69).  Respondents were the founders and controlling parties of U.S. ZUGA.  (ECF No. 1, PageID #3; ECF No. 1-1, PageID #70).  The Repurchase Agreement contemplated a

1

reorganization of the structure and ownership of U.S. ZUGA and the four businesses controlled by U.S. ZUGA.  (ECF No. 1-1, PageID #57, 69–70).  The reorganization was to transform U.S. ZUGA into a subsidiary of Rurong (Chengdu) Medical Technology Company, Ltd. ("Chengdu Rurong"), "with the aim of listing Chengdu Rurong in China."  (*Id.* at PageID #59).

After the reorganization, Petitioners' equity in U.S. ZUGA would have been converted into equity in Chengdu Rurong and Respondents promised to repurchase 38.85% of Petitioners' equity in Chengdu Rurong for the amount of 15 million Chinese Yuan by June 30, 2021 (repurchase due date).  (*Id.* at PageID #58–59, 70–71).  The Repurchase Agreement also contained the following arbitration provisions:

> 5.1 In the event of any dispute arising from the performance of this Agreement, the Parties shall resolve the same through amicable consultations; upon failure of such consultations or in the event that either Party or a plurality of Parties shall be unwilling to engage in such consultations, the dispute may be submitted to the China International Economic and Trade Arbitration Commission for resolution through arbitration.

> 5.2 In the event of relevant costs incurred due to the application for arbitration and engagement of attorneys as a result of any dispute over this Agreement, including but not limited to costs such as arbitration fees, attorneys' fees, travel expenses and transportation, etc., they shall be borne by the Party in breach.

(*Id.* at PageID #72–73).

The reorganization contemplated under the Repurchase Agreement was completed before the repurchase due date and Petitioner sent a Notice of Demand for Repurchase on April 12, 2021, seeking fulfillment of Respondents' obligations under the Repurchase Agreement.  (*Id.* at PageID #58–59).  After Respondents failed to fulfill their repurchase obligations and efforts to resolve the dispute failed, Petitioners submitted the dispute to the China International Economic and Trade Arbitration Commission ("CIETAC") for arbitration on July 13, 2021.  (*Id.* at PageID #42).  The

CIETAC accepted the arbitration case based on the arbitration clauses found in the Repurchase Agreement.  (*Id.* at PageID #42).

On August 18, 2022, the CIETAC issued an arbitral award for Petitioners and against Respondents ("Award").  (*Id.* at PageID #12–67).  The Arbitral Tribunal determined that: (i) the Repurchase Agreement was a valid and binding agreement, "which embodied the true meaning of the parties and did not violate any mandatory provisions of laws and administrative regulations"; and (ii) Respondents had breached the contract by failing to pay the repurchase amount.  (*Id.* at PageID #60–61).  The Arbitral Tribunal awarded the following relief:

> (I) [Respondent Chan Qian Wang and Respondent Hao Zhou] shall jointly and severally pay the Petitioners CNY 15 million to repurchase 38.85% of all equity held by the Petitioners in Rurong (Chengdu) Medical Technology Co., Ltd.

> (II) [Respondent Chan Qian Wang and Respondent Hao Zhou] shall jointly and severally pay the late payment fee for the repurchase of the Petitioners' equity, which shall be calculated on the basis of CNY 15 million at the rate of 10% per annum from July 1, 2021 to the date of actual payoff of the entire repurchase price.

> (III) [Respondent Chan Qian Wang and Respondent Hao Zhou] shall jointly and severally pay the attorney's fee of CNY 100,000 paid by the Petitioners in connection with this case.

> (IV) The arbitration fee in this case is CNY 306,000, which shall be borne entirely by [Respondent Chan Qian Wang and Respondent Hao Zhou].  Given that the arbitration fee has been fully offset by the advance payment made by the Petitioners, the [Respondent Chan Qian Wang and Respondent Hao Zhou] shall pay the Petitioners CNY 306,000 in compensation for the arbitration fee paid by the Petitioners on its behalf.

(*Id.* at PageID #62–63).  The Award stated that it was a final award that took immediate effect, and Respondents were to fully pay the award within fifteen days.  (*Id.* at PageID #63).

### B.  Proceedings in Federal Court

On January 24, 2024, Petitioners filed the instant action, seeking enforcement of the Award against Respondents Chan Qian Wang and Hao Zhou.  (*Id.* at PageID #6–9).  On April 16, 2024,

Respondent Wang filed a Notice of Automatic Stay in Bankruptcy, informing the Court of the pendency of Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Ohio and a corresponding automatic stay under 11 U.S.C. § 362.  (ECF No. 13).

On April 25, 2024, Respondent Zhou filed a *pro se* letter entitled "Answer to Summons In A Civil Action" which argued that: (i) the Court lacked personal jurisdiction over him; and (ii) the instant petition to enforce an arbitration award was premature.  (ECF No. 14).  On May 27, 2024, Petitioners responded that Respondent Zhou had provided no evidence to support these assertions and states that they are unaware of any pending proceeding concerning the validity of the arbitration award.  (ECF No. 17, PageID #125).  On July 1, 2024, Respondent Zhou filed a reply that: (i) requested a stay of the proceeding; (ii) provided screenshots and translations of a text conversation between Respondent Wang and her lawyer, which he argues demonstrate that there is a pending, timely appeal of the arbitration award; and (iii) stated that notarized materials were taking longer than expected and he was "committed" to providing this evidence within two months. (ECF No. 19; ECF No. 19-1).

On July 9, 2024, the Court stayed the case as to Respondent Wang pursuant to 11 U.S.C. § 362(a) and denied Respondent Zhou's request to dismiss the petition for lack of personal jurisdiction.  (ECF No. 20).  The Court also denied Respondent Zhou's request to stay proceedings after finding that Respondent Zhou failed to provide documentation to establish that the Award was non-final.  (*Id.* at PageID #166–68).

On August 6, 2024, the stay was lifted after Respondent Wang filed a notice of discharge of bankruptcy.  (ECF No. 21; Order [non-document] dated Aug. 6, 2024).  The Court ordered Respondents to file their responses to the Petition by August 29, 2024.  (Order [non-document]

dated Aug. 8, 2024).  On August 28, 2024, Respondent Zhou filed a response in compliance with the Court's August 8, 2024 Order.  (ECF No. 23).  The response was a single page which stated that: (i) the Petition was premature; (ii) Respondent Zhou denied the Petition; and (iii) enforcement of the Petition would be contrary to public policy.  (*Id.*).  Respondent Zhou requested that the Court "set up a hearing" and "start the trial to deny the [Petition]."  (*Id.*).  On September 9, 2024, the Court dismissed Respondent Wang from this action pursuant to a construed Rule 21 motion to dismiss (ECF No. 22).  (ECF No. 24).

Because of Respondent Zhou's *pro se* status and the sparse nature of his response filing, the Court ordered Respondent Zhou to file supplemental briefing to support his response in opposition to the Petition.  (ECF No. 25).  The Court specifically instructed Respondent Zhou to: (i) "provide both facts to support Respondent Zhou's arguments that the Petition is premature and unenforceable (*e.g.*, documents and sworn affidavits), as well as legal authority in support"; and (ii) "also provide arguments and authority to support his request for a hearing in this matter."  (*Id.* at PageID #184–85).  In his supplemental brief, Respondent Zhou reiterated that: (i) the arbitration was not final because of a pending appeal; (ii) the process of procuring supporting documents was taking longer than expected; and (iii) he would provide the supporting documents within another two months.  (ECF No. 26, PageID #186).  He also argued that the Award was unenforceable because it was contrary to United States public policy and enforcement of the Award would cause undue hardship to Respondent Zhou and company shareholders.  (*Id.* at PageID #186–87). Petitioners filed a response to Zhou's supplemental brief.  (ECF No. 27).

## II.     LAW AND ANALYSIS

### A.     The New York Convention

The Petition is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38 (1958), incorporated by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208.  The United States and China are both signatories of the New York Convention.  *See Contracting States*, New York Convention, https://www.newyorkconvention.org/contracting-states [https://perma.cc/S2PE-JKCG].  Under the FAA:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court *shall* confirm the award *unless* it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added).  Taken together, the New York Convention and the FAA subject petitions seeking confirmation of foreign arbitral award to a burden-shifting framework.  *See Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 561 (3d Cir. 2022).

First, the party seeking confirmation of the award need only provide an authenticated original or certified copy of the arbitration award and the arbitration agreement.  *See* New York Convention, art. IV; *Estate of Zhengguang v. Yu Naifen Stephany*, 105 F.4th 648, 654 (4th Cir. 2024) (citing New York Convention, art. IV); *Jiangsu*, 52 F.4th at 561 (same).  Then, if the party seeking confirmation satisfies the initial threshold showing, the party opposing confirmation of the award must furnish proof of one of five affirmative defenses, one of which includes: "(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  *See* New York Convention, art. V, § 1; *Jiangsu*, 52 F.4th at 561; *M & C Corp. v. ERWIN BEHR GMBH &*

6

*Co., KG*, 87 F.3d 844, 848 (6th Cir. 1996). The Court may also refuse to recognize and enforce

the award if it finds that "[t]he recognition or enforcement of the award would be contrary to the

public policy of [the United States]." *See* New York Convention, art. V, § 2(b); *Estate of*

*Zhengguang*, 105 F.4th at 654; *M &C Corp.*, 87 F.3d at 848. Put simply, "[i]f the requirements of

Article IV are met, the award is to be confirmed, unless one or more criteria of Article V are met."

*Aasma v. Am. S.S. Owners Mut. Prot. & Indem.*, 238 F. Supp. 2d 918, 920–21 (N.D. Ohio 2003)

(footnotes omitted). "The party opposing confirmation of a foreign arbitration award bears the

burden of demonstrating one of the exceptions to confirmation." *Id.* (citing *CBS Corp. v. WAK*

*Orient Power & Light Ltd.*, 168 F. Supp. 2d 403, 410 (E.D. Pa. 2001)).

### B.  Respondent Zhou's Hearing Request

The Sixth Circuit has not directly addressed the procedural rules applied to a petition

seeking confirmation of a foreign arbitral award under the New York Convention. However, the

Third Circuit has provided a thorough analysis of the procedures afforded a confirmation petition

under the New York Convention, which the Court adopts:

> Many of the ordinary procedural rules governing civil litigation are inapplicable to
> petitions under the New York Convention. This is because, by statute, an
> application to confirm a foreign arbitration award must "be made and heard in the
> manner provided by law for the making and hearing of motions." Thus, "a petition
> to confirm an arbitration award . . . is 'a motion, not a pleading.'" We have
> therefore stressed that the Federal Rules of Civil Procedure governing pleadings,
> including "the pleading standards set forth in Rule 12 . . . are inapplicable to FAA
> motions."
>
> FAA petitions instead result in "summary proceedings that do not require [a]
> district court to carry on a formal judicial proceeding." *CPR Mgmt., S.A.*, 19 F.4th
> at 244 (cleaned up) (citing *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d
> 245, 255 (3d Cir. 2020)). The court may review the documents presented by the
> parties and often "can, within its discretion, decide an FAA motion without
> conducting a full hearing or taking additional evidence." In other cases, further
> proceedings may be necessary to resolve a material factual dispute. At bottom, a
> district court must determine the merits of a confirmation petition on the record

before it, and its review is not necessarily limited to factual allegations in the petition itself.

*Jiangsu*, 52 F.4th at 560 (footnotes omitted).  In other words, district courts have discretion to decide a confirmation petition solely on the parties' briefing and are not required to hold an evidentiary hearing or formal proceedings.

Respondent Zhou has not convinced the Court that an evidentiary hearing is necessary to resolve the Petition.  In Respondent Zhou's initial response filing, he requested that the Court "set up a hearing and start the trial to deny the [Petition]."  (ECF No. 23).  But he did not provide any particular support for his request.  When the Court ordered supplemental briefing, it instructed Respondent Zhou to provide arguments and authority to support his request for a hearing.  (ECF No. 25, PageID #184–85).  Despite the Court's instructions, Respondent Zhou's supplemental brief simply repeated his request for a hearing without providing any authority or caselaw in support.  (ECF No. 26, PageID #186–87).  Although Respondent Zhou contends that the Award is non-final because of a pending appeal, he has failed to provide any evidence to support this claim.  He even indicated that he could provide such evidence within two months in June 2024, and again on October 5, 2024, but no evidence has been forthcoming.  Petitioners have also maintained that they are unaware of such an appeal.  (ECF No. 27, PageID #193).

Based on these considerations, the Court finds that the record before it is sufficient to resolve the Petition and an evidentiary hearing is unwarranted.  Thus, Respondent Zhou's request for an evidentiary hearing and trial is **DENIED**.

### C.     Respondent Zhou's Objections to Confirmation of the Arbitral Award

Respondent Zhou does not challenge or contest that there was a valid agreement to arbitrate between the parties and that an arbitration award was issued by the CIETAC; nor does the Court have any reason to doubt the authenticity of the Repurchase Agreement and Award.  Respondent

Zhou solely opposes confirmation of the Award on the grounds that: (i) the Award has been rendered non-final by a pending appeal; and (ii) enforcement of the Award would violate United States public policy.  (ECF No. 23; ECF No. 26, PageID #186–87).  Thus, he has specifically invoked Article V, §§ 1(e) and 2(b) of the New York Convention.  Because the Court finds that Respondent Zhou has failed to demonstrate the applicability of these two exceptions, it will confirm the Award.

### 1.    *Article V, § 1(e) – Non-Binding/Non-Final Arbitral Award*

Article V, § 1(e) permits the Court to refuse recognition of a foreign arbitral award if the "award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Respondent Zhou maintains that the Award is not final because Respondent Wang filed an appeal of the Award to the Beijing Fourth Middle Court that is still pending.  (ECF No. 19, PageID #154; ECF No. 26, PageID #186).  On the record before the Court, Respondent Zhou has not established that the Award has been rendered non-final and that the exception under Article V, § 1(e) applies.

As discussed previously in this Order, Respondent Zhou's initial response brief stated that the pending appeal was filed on January 22, 2024 and cited a text conversation between Respondent Wang and his attorney asking for documents relating to that appeal.  (ECF No. 19, PageID #154; ECF No. 19-1, PageID #156–57).  The Court found this evidence insufficient because: (i) there was no official documentation establishing a pending appeal; (ii) the text conversation reflected that the alleged pending appeal had not been officially filed; and (iii) an appeal filed on January 22, 2024 would be late-filed and invalid.  (ECF No. 20, PageID #167). The Court gave Respondent Zhou an opportunity to file a supplemental brief specifically so he could provide facts and legal authority to support his arguments that the Petition is premature and

unenforceable.[1]  (ECF No. 25, PageID #184).  But his supplemental brief did not provide any new documentation, affidavits, or other evidence to establish the non-finality of the Award.  Instead, Respondent Zhou provided the same text conversation previously rejected and he now asserts that the alleged appeal was filed on January 22, 2023, rather than January 22, 2024 (the date provided in Respondent Zhou's initial response).  (*Compare* ECF No. 19, *with* ECF No. 26). Notwithstanding Respondent Zhou's new contention that the appeal was filed a year earlier than previously stated, the text conversation (and the only evidence he has provided) still undercuts his argument and establishes that no appeal was officially filed as of the date of that conversation (the last message being posted on June 26, 2024).

Because Respondent Zhou has failed to provide any evidence to support his contention that the Award is non-final, despite repeated opportunities to do so, and Petitioners maintain that they are unaware of any pending appeal, the Court finds that the Award is final and binding on the parties.  Accordingly, Respondent Zhou has not established that Article V, § 1(e) applies to this matter.

### 2.    *Article V, § 2(b) – Public Policy*

Respondent Zhou also asserts that the Court should refuse to recognize and enforce the Award pursuant to Article V, § 2(b) because enforcement of the Award would be contrary to public policy.  (ECF No. 26, PageID #186–87).  He argues that enforcement would conflict with public policy because: (i) Petitioners coerced Respondents into entering the Repurchase Agreement, which Respondents signed under duress; (ii) Petitioners pursued arbitration in 2021, despite knowing Respondents had no capability to fulfill the repurchase obligations in the Repurchase Agreement; and (iii) enforcement would cause hardship to Respondents and would not be in the

---

[1] The Court cited "documents and sworn affidavits" as examples of evidence Respondent Zhou should provide in his supplemental brief.  (ECF No. 25, PageID #184).

best interest of shareholders, employees, and customers.  (*Id.*).

"Courts have construed the public policy exception narrowly, applying the exception only where 'enforcement would violate the forum state's most basic notions of morality and justice.'" *Aasma*, 238 F. Supp. 2d at 922 (citing *Parsons & Whittemore Overseas Co. v. RAKTA*, 508 F.2d 969, 976 (2d Cir. 1974); *Indocomex Fibres Pte., Ltd. v. Cotton Co. Int'l, Inc.*, 916 F. Supp. 721, 727 (W.D. Tenn. 1996)); *see also M & C Corp.*, 87 F.3d at 851.  The public policy at issue must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 299 (S.D.N.Y. 2013) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)).  The Court finds that Respondent Zhou has made no such showing.

The narrow public policy exception prevents the Court from "revisit[ing] or question[ing] the fact-finding or the reasoning which produced the award." *International Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998).  But this is precisely what Respondent Zhou aims to do.  He is attempting to relitigate factual determinations made by the Arbitral Tribunal, which already rejected the same arguments now raised by Respondent Zhou after several hearings and rounds of briefing submitted by the parties.  (ECF No. 1-1, PageID #42–57).  The Arbitral Tribunal found that: (i) the Repurchase Agreement was a valid and binding agreement that "embodied the true meaning of the parties"; (ii) there was insufficient evidence to prove duress; (iii) the Repurchase Agreement did not violate company law or "any mandatory provisions of laws and administrative regulations"; and (iv) Respondents breached the Repurchase Agreement by failing to fulfill their obligation under the contract.  (ECF No. 1-1, PageID #59–61).  These attempts to relitigate fall outside the ambit of Article V, § 2(b)'s narrow public policy

exception.  *See Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 818–19 (2d Cir. 2022) (holding that the district court properly rejected public policy arguments which asked the court to relitigate factual determinations made by an arbitral panel); *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*, 111 F.4th 1294, 1300–01 (11th Cir. 2024) (same).

As for the argument that enforcement of the Award would cause hardship on Respondent Zhou, force him into personal bankruptcy, and would be against the interests of the company, shareholders, and customers, he has presented no authority that this hardship would violate public policy.  These appear to be general public policy concerns that fall outside the narrow exception under the New York Convention.  *See Yukos Capital*, 963 F. Supp. 2d at 299.  Still, even if the Court were to consider Respondent Zhou's various arguments, he has provided no evidence (documents or affidavits) to support them—even after several chances to do so.  Although the Court is mindful of the personal hardship that Respondent Zhou alleges will result, the Court finds that confirmation and enforcement of the Award would not violate the "most basic notions of morality and justice" of the American justice system.  Thus, the Court finds that Article V, § 2(b) does not apply.

## III.    CONCLUSION

For the foregoing reasons, the Court finds that Respondent Zhou has failed to establish the applicability of any exception to confirmation under the New York Convention.  Accordingly, Petitioners' Petition to Recognize and Enforce a Foreign Arbitration Award (ECF No. 1) is **GRANTED**.  Petitioners are directed to submit a proposed judgment, consistent with the Award, on or before December 9, 2024.  The proposed judgment shall include a calculation of any applicable interest and a conversion of all monetary amounts to U.S. dollars.  Respondent Zhou

shall file any objections to the form of the proposed judgment within 14 days of Petitioners'
submission.

**IT IS SO ORDERED.**

Dated: November 25, 2024

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**